IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**FDK TRANSPORT, INC.**                                                                    **PLAINTIFF**

**V.**                                      **CASE NO. 5:25-CV-05160**

**J.B. HUNT TRANSPORT, INC.**                                                              **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

Presently before the Court is a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) (Doc. 13) by J.B. Hunt Transport, Inc. ("J.B. Hunt"). The Court has reviewed all pertinent briefing and exhibits, as well as the operative Complaint (Doc. 2). FDK Transport, Inc. ("FDK") brings claims for breach of contract, unjust enrichment, deceit, and fraud in the inducement for unpaid sums for transportation services rendered to J.B. Hunt. The Court finds that each of FDK's claims is time-barred, and the Motion to Dismiss is thus **GRANTED** and FDK's claims are **DISMISSED WITHOUT PREJUDICE**.

### I. ALLEGED FACTS

This action arises out of two agreements between J.B. Hunt and FDK: the Outsource Carriage Agreement ("OCA") (Doc. 2-1), and the Independent Contractor Services Amendment to the OCA ("Amendment") (Doc 2-2). The OCA, signed on December 27, 2017, required FDK to provide J.B. Hunt outsourced transportation services in exchange for compensation. Under the Amendment, signed August 19, 2019, FDK agreed to transport loaded and empty trailers on behalf of J.B. Hunt for a fee.

FDK began transporting trailers on behalf of J.B. Hunt from Pueblo, Colorado to Rialto, California starting in April 2020, and also stored at least six broken trailers on J.B. Hunt's behalf. *See* Doc. 2 ¶¶ 16, 17, 20. FDK alleges that in July 2020, J.B. Hunt stopped

1

paying FDK the full amount owed for FDK's transportation services, and that it was not paid at all for its storage services. *Id.* ¶¶ 15, 18. Although J.B. Hunt's nonpayment continued, FDK apparently continued to tender services to J.B. Hunt until June 2022 when it finally ceased performance. *Id.* ¶ 20. FDK alleges that it pursued payment during that time and believed J.B. Hunt would eventually pay what it owed. *Id.* ¶ 15. FDK alleges that only after a February 2023 incident where J.B. Hunt demanded $430,000 from FDK for storing J.B. Hunt's trailers did FDK realize that J.B. Hunt did not intend to pay for its prior services. *Id.*

## II. LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). In ruling, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quotation marks omitted). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim is facially plausible—rather than sheerly possible—when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372 (8th Cir. 2016) (quotation marks and citations omitted).

## III. DISCUSSION

### A. Breach of Contract & Unjust Enrichment

FDK's breach of contract and unjust enrichment claims are time-barred.  Under 49 U.S.C. § 14705, a carrier providing transportation services that is subject to the Secretary of Transportation and Surface Transportation Board's jurisdiction under 49 U.S.C. § 13501 must begin a civil action to recover charges "within 18 months after the claim accrues."  A claim accrues upon "delivery or tender of delivery by the carrier." 49 U.S.C. §14705(g).  The Secretary and the Board have jurisdiction, in turn, when property is transported by motor carrier "between a place in . . . [a] State and a place in another State."  49 U.S.C. § 13501(1)(A) (cleaned up).

Both the OCA and the transactions at issue make clear that § 14705 governs here, and thus FDK was required to bring its claims for nonpayment within the 18-month statute of limitations.  The OCA provides that "this OCA, and the services provided hereunder, shall be subject to Titles 49 of the United States Code ('USC') and the Code of Federal Regulations ('CFR')."  See Doc. 2-1 ¶ 1.1.  The complaint similarly alleges conduct that falls squarely within the Secretary of Transportation's jurisdiction, as the transactions at issue all involve interstate transport of loaded and unloaded trailers.  See Doc. 2, ¶¶ 16, 20, 28.[1]  Because FDK alleges that it last performed (or tendered delivery) in June 2022, the eighteen-month statute of limitations would have run by December 30, 2023.  FDK filed its complaint on July 29, 2025, and therefore its claims are untimely.

FDK, however, argues that it meets the criteria for exemption from the Secretary's

---

[1] FDK separately alleges nonpayment for storage services.  Nonetheless, the Court finds that these charges fall within the expansive definition of "transportation" under 49 U.S.C. § 13102(23)(B), which includes "services related to that movement, including . . . storage . . . of passengers and property."

3

jurisdiction under 49 U.S.C. § 13503(b)(1)(A) (the so-called "terminal area exception") because the transactions at issue occurred within the Pueblo, Colorado commercial zone. This argument is defective for two reasons. First, the terminal area exception includes only those places "*within* the commercial zone," and not interstate shipments that happen to originate in or relate to the commercial zone. See 49 C.F.R. § 372.301(a) (emphasis added). Second, the Pueblo, Colorado commercial zone's authorizing regulation specifically carves out from the terminal area exemption "transportation by motor vehicle in interstate or foreign commerce . . . under . . . arrangement for a continuous carriage or shipment *to or from a point beyond such zone.*" See 49 C.F.R. § 372.213 (emphasis added). FDK's reading would expand the terminal area exception to cover any and all interstate shipments (which are plainly within the Secretary and Board's jurisdiction under the statute) so long as they originate or cross through an exempted terminal area. This cannot be the case. As other courts have explained, it appears the "main purpose of the [terminal area] exemption was to avoid submitting purely local operations to liability under the Carmack Amendment" and only transactions that are "purely local and 'incidental' to the primary interstate transportation of the cargo" are exempted. See *Bullocks Express Transp., Inc. v. XL Specialty Ins. Co.*, 329 F. Supp.2d 1246, 1259 (D. Utah 2004).

FDK's argument that J.B. Hunt waived the eighteen-month statute of limitations as to unpaid charges similarly fails. The OCA provides that "[a]ny action at law by either party to collect alleged undercharges or overcharges under the terms of this OCA shall be commenced not later than eighteen (18) months after delivery of the shipment." (Doc. 2-1, ¶ 9). FDK argues that because J.B. Hunt did not specify that the eighteen-month statute of limitations applied to *unpaid* charges in addition to overcharges and

4

undercharges, it has waived the statute of limitations. As an initial matter, it is not clear that an unpaid charge is not simply a type of undercharge. In any event, the Court will not construe what is—at best—an ambiguous provision to constitute waiver. It is a "well-settled rule in construing a contract that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement." *Coleman v. Regions Bank*, 364 Ark. 59, 65 (2005). Here, what FDK construes as a waiver clause uses no language purporting to waive a statute of limitations, but instead reaffirms the applicable limitations period for overcharges and undercharges, and further notes that the expiration of the eighteen month term "shall be a complete and absolute defense against any such claim." *See* Doc. 2-1 ¶ 9. Paragraph 1 of the OCA additionally provides that the agreement is "subject to Title 49 of the United States Code" unless the rights and remedies are in conflict with the terms of the OCA. *Id*. Only a highly strained reading of the OCA suggests waiver. Reading the contract as a whole, the Court finds that the eighteen-month statute of limitations is applicable and FDK's claims are untimely.

FDK's unjust enrichment claim is time barred for the same reasons: the eighteen-month limitation period applies for all of FDK's claims, not just its breach of contract claim. Federal law preempts state law where there is an "outright or actual conflict" between the two, or where compliance with both federal and state law "is in effect physically impossible." *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 368 (1986). Where there is a conflict between the applicable statute of limitations for a given claim and the federal statute's limitation period is expressly provided, federal law controls. *Cf. DelCostello v. International Broth. of* Teamsters, 462 U.S. 151, 161–162 (only in the absence of an express limitations period do Courts borrow state statutes of limitations,

5

and even then, only where the importation of state law will not "frustrate or interfere with the implementation of national policies"). No matter how FDK may characterize its claim, it is a civil action by a carrier to recover charges for transportation or service provided by the carrier, and thus the eighteen-month limitation period applies. *See Emmert Indus Corp. v. Artisan Assoc., Inc.*, 497 F.3d 982, 988 (9th Cir. 2007); *Artic Exp. Inc. v. Del Monte Fresh Produce NA, Inc.*, 366 B.R. 786, 792 (S.D. Ohio 2007); *Old Dominion Freight Line, Inc. v. Clinton Aluminum U.S., Inc.*, 2020 WL 6947349, at *3 (eighteen-month statute of limitations period applies to claims brought under state law "to recover charges for shipping services"); *see, e.g., Firscom, Inc. v. Qwest Communications*, 618 F. Supp.2d 1001, 1005 (D. Minn. 2007) (state law promissory estoppel, fraudulent misrepresentation, and negligence claims are actions at law related to the recovery of overcharges, and must be filed within similar telecommunications statute's two-year statute of limitations).

### B. Deceit & Fraud in the Inducement

FDK's deceit and fraud in the inducement claims are time barred for the foregoing reasons. Even if the claims were timely, however, they are defective. FDK's deceit and fraud claims are based on no more than J.B. Hunt's promise to compensate FDK under the contract. *See* Doc. 2-1, ¶¶ 42–44, 49–51. But it is well settled under Arkansas law that "representations that are promissory in nature, or of facts that will exist in the future, though false, will not support an action for fraud." *Hobson v. Entergy Ark., Inc.*, 2014 Ark. App. 101, 9 (2014). "Broken promises are therefore generally within the realm of breach-of-contract actions, and not fraud actions." *Id.* Although artfully pled, FDK alleges no more than garden variety breach of contract claims.

For FDK to sustain a fraud claim, it must allege—with particularity—the

circumstances constituting the fraud or mistake. See Fed. R. Civ. P. 9. False representations must be ones of fact, and generally must relate to a "past event, or a present circumstance, but not a future event." *P.A.M. Transport, Inc. v. Arkansas Blue Cross & Blue Shield*, 315 Ark. 234, 240 (1993), *as clarified on denial of reh'g* (Jan. 10, 1994). Although there is an exception to this general rule where "the person making the representation or prediction knows it to be false at the time it is made," FDK does not allege that with reasonable particularity here. See *Delta Sch. of Com., Inc. v. Wood*, 298 Ark. 195, 200, *opinion supplemented on denial of reh'g*, 298 Ark. 195 (1989). Taken as true, the Complaint alleges that J.B. Hunt complied with its obligations to pay under the contract until July 2020. See Doc. 2-1 ¶ 15. Although FDK makes the wholly conclusory allegation that J.B. Hunt knew that its representation was "false when it was made," it alleges no facts to support why J.B. Hunt held true to its promise from the time the OCA was signed until July 2020, and began to effectuate its fraud and deceit only at that time. FDK does not plead any facts that would establish J.B. Hunt's knowledge of falsity or its lack of intent to fulfill its contractual obligations sufficient to satisfy its burden under Rule 9. Its deceit and fraud claims are thus both time barred and substantively deficient.

## IV. CONCLUSION

For the reasons stated herein, J.B. Hunt's Motion to Dismiss (Doc. 12) is **GRANTED**. All claims against J.B. Hunt are hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED** on this 14th day of October, 2025.

_____
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE